IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| MYRON JACKSON, MARK PARKER, and RA HEARNE, | * * * | |
| Plaintiffs | * * | |
| VS. | * * | NO: 4:08CV00353 SWW |
| ADVANTAGE COMMUNICATIONS, INC., MICHAEL STEELE, and E'VAN STEELS | * * * | |
| Defendants | * | |

**ORDER**

Plaintiffs Myron Jackson, Mark Parker, and Ra Hearn[1] bring this lawsuit against Defendants Advantage Communications, Inc. ("ACI"), Michael Steele, and E'van Steele, alleging that Defendants failed to pay them overtime and retaliated against Jackson in violation of the Fair Labor Standards Act ("FLSA").  Now before the Court is Defendants' motion for summary judgment (docket entries #20, #21, #22) and Plaintiffs' response in opposition (docket entries #25, #26, #27).  After careful consideration, and for reasons that follow, Defendants' motion for summary judgment will be granted in part and denied in part.  Plaintiff Jackson's retaliation claim will be dismissed with prejudice, and Plaintiffs' claims for overtime compensation remain for trial.

---

[1]Plaintiff Sammy Andrews joined in the original complaint.  However, on July 31, 2009, the parties filed a joint stipulation of dismissal, and pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii), the Clerk of the Court terminated Andrews as a party to this action.

**I.**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The non-moving party may not rest on mere allegations or denials of his pleading but must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587 (quoting Fed. R. Civ. P. 56(e)).   "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995).

**II.**

Plaintiffs Myron Jackson, Mark Parker, and Ra Hearn worked for Defendant ACI, an advertising firm owned by Defendants Michael and E'van Steele. Plaintiffs allege that Defendants failed to pay them overtime in violation of the FLSA and Arkansas law, and Jackson brings an additional claim for retaliation, alleging that Defendants ended his employment because he requested overtime pay.

Defendants move for summary judgment on grounds that (1) Plaintiffs were not entitled

to overtime pay because they qualify as exempt, administrative employees and (2) Jackson cannot succeed with a retaliation claim because he did not engage in protected activity.

### A. Administrative Employee Exemption

The FLSA requires covered employers to compensate non-exempt employees at overtime rates for time worked in excess of statutorily-defined maximum hours. *See* 29 U.S.C. § 207(a). However, the statute exempts certain employees from overtime protections, including "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). Defendants assert that Plaintiffs qualify as "administrative employees" exempt from FLSA overtime compensation requirements.

Under Department of Labor ("DOL") regulations, an "employee employed in a bona fide administrative capacity" is someone: (1) who is compensated not less than $455 per week; (2) whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer; and (3) whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance. *See* 29 C.F.R. § 541.200.

Plaintiffs acknowledge that they received compensation at least $455 per week on a salary basis and that their primary office duties involved the performance of work directly related to ACI's general business operations. The parties disagree, however, as to whether Plaintiffs exercised discretion and independent judgment, with respect to matters of significance, in carrying out their primary job duties.

The phrase "discretion and independent judgment" in this context must be applied in the light of all the facts involved in the particular employment situation in which the question arises. *See* 29 C.F.R. § 541.202(b). Factors to consider when determining whether an employee

exercises discretion and independent judgment include, but are not limited to, the following:

> (1) whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices;
>
> (2) whether the employee carries out major assignments in conducting the operations of the business;
>
> (3) whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business;
>
> (4) whether the employee has authority to commit the employer in matters that have significant financial impact;
>
> (5) whether the employee has authority to waive or deviate from established policies and procedures without prior approval;
>
> (6) whether the employee has authority to negotiate and bind the company on significant matters;
>
> (7) whether the employee provides consultation or expert advice to management;
>
> (8) whether the employee is involved in planning long- or short-term business objectives;
>
> (9) whether the employee investigates and resolves matters of significance on behalf of management; and
>
> (10) whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

*See* 29 C.F.R. § 541.202(b).

Employees exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level. "Thus the term 'discretion and independent judgment' does not require that the decisions made by an employee have a finality that goes with unlimited authority and a complete absence of review. The decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action." 29 C.F.R. § 541.202 (c). However, "[t]he exercise of discretion and independent judgment must be more than the use of skill in applying

well-established techniques, procedures or specific standards described in manuals or other sources." 29 C.F.R. § 541.202(e). "The exercise of discretion and independent judgment also does not include clerical or secretarial work, recording or tabulating data, or performing other mechanical, repetitive, recurrent or routine work. An employee who simply tabulates data is not exempt, even if labeled as a 'statistician.'" *Id.*

In sum, determining whether Plaintiffs exercised discretion or independent judgment in performing primary job duties requires close attention to the facts. With that in mind, the Court now turns to evidence regarding the actual job responsibilities of each plaintiff.[2]

**Parker**

Parker worked as media director for ACI from May 5, 2003 until he resigned in October 2007. Defendants claim that Parker used discretion and independent judgment in conducting research for media plans, developing media schedules, and executing media buys. They also report that Parker oversaw ACI's requests for proposals, stating, "One employee would assist Parker in putting the physical product together and send it to the appropriate client. However, most often it was Parker. The [request for proposals] was approved by Michael Steele." Docket entry #21, 4. The record contains no information that enables the Court to understand the

---

[2]Defendants present Plaintiffs' written job descriptions for consideration. However, because Defendants must show that Plaintiffs exercised discretion and independent judgment based on the *actual* nature of the duties performed, not based on Plaintiffs' job titles or job descriptions, the Court finds that such evidence has little probative value. *See Reich v. John Alden Life Ins. Co.,*126 F.3d 1, 10 -11 (1st Cir. 1997)(" However, the particular title given to an employee is not determinative, as an employee's exempt status must instead be predicated on whether his or her duties and responsibilities meet all of the applicable regulatory requirements.").

significance of "requests for proposals."

Parker describes his responsibilities at ACI as follows:

> Determining who the target audience was for the particular client, researching, making recommendations, utilizing or making recommendations on print, radio and/or television, whichever would be the most effective, efficient way to reach that target audience.

Docket entry #20, Ex. 1 (Parker Dep.) at 25. Parker testifies that he presented recommendations internally to an ACI account service team and "then on to the client." *Id*. According to Parker, an "account service team" includes an account executive that functions as the main liaison between the agency and the client. Parker states that in some cases, clients identify the target audience, but in most cases, "it was the account service team that made that initial recommendation . . . backed up by Mike Steele." Docket entry #25, Ex. D (Parker Dep.) at 27.

Parker testifies that he developed media plans for clients, which consisted of "a recommendation on how to most effectively and cost efficiently reach the intended target audience with an advertising message . . . ." *Id*. at 29. However, in opposition to summary judgment, Parker claims that he did not provide his own recommendation and expert advice to management–he merely copied information from Arbitron, Inc. and Nielsen Media Research and provided the information to Michael Steele "for approval and forwarding to the client." Docket entry #25, Ex. F, ¶ 4-7.

Finally, Parker testifies that he made "media buys," stating: "I would contact my media vendor, make certain the rates were correct that we were going to be utilizing, put my buy down in written format in a broadcast order for radio or television, an insertion order for print, similar to what is known as a purchase order, and then forward that to the appropriate vendor." Docket entry #25, Ex. D (Parker Dep.) at 27.

**Jackson**

Jackson worked for ACI from December 2002 to September 2007.  At first, Jackson worked as an account executive and wrote scripts for radio ads.  Docket entry #20, Ex. #3 (Jackson Dep.) at 22-23.  Two months after his hire, Jackson's title changed to creative manager, and he remained in that position until his title reverted back to account executive six months before his employment ended.  *Id.*

In support of Defendants' exemption defense, they present the affidavits of Benton Brandon ("Brandon") and Nigel Hall ("Hall").  *See* docket entry #20, Exs. #4, #6.  Brandon, a principal of Producer's Studio, LLC ("Producer's"), testifies that ACI contracts with Producer's to "shoot various advertisements for ACI clients."  Docket entry #20, Ex. #6.  Brandon states that Jackson was Producer's principal ACI contact, and he managed all aspects of television commercial production–including choosing the location, gathering actors, writing script, directing "the shooting of the commercial," editing, and approving the final product.  *Id.*

Hall is an ACI account executive, who has worked for ACI since August 2005.  Hall echoes Brandon's testimony regarding Jackson's duties with respect to television ad production, stating that Jackson was responsible for "preproduction, writing the script, editing, post production, and timing."  Docket entry #20, Ex. #4, ¶¶ 5-6.  Hall states that "preproduction is the same as organizing" and entails preparing production estimates and budgets, selecting the venue, scheduling, and selecting actors.  Hall testifies that Jackson also acted as the director during "the shoot."  *Id.*  According to Hall, Jackson had similar responsibilities for radio advertisements.  *Id.*, ¶ 7.

Jackson insists that he had no autonomy in the performance of his job duties with regard to television and radio ad production, and his only responsibility was to proofread scripts and

ensure that they fit within given time frames. Docket entry #20, Ex. #3 (Jackson Dep.) at 24-26. According to Jackson, his job consisted of no more than carrying out Michael Steele's instructions. However, Jackson does acknowledge that he developed final visual images, and that the "bulk of a lot of [his] hours when to developing print ads, outdoor boards, [and] web designs."[3] *Id*. at 53-54, 56.

### Hearne

Hearne worked for ACI as an associate account executive from August 29, 2005 until he resigned his position on March 8, 2007. Hall, who served as Hearne's supervisor, testifies that Hearn "coordinated tasks," meaning that he made sure everyone was doing what "they're supposed to do." Docket entry #24, Ex. C (Hall Dep.) at 56. Hall states that Hearne's duties were "based on the time line" and "could be as simple as an e-mail, or a meeting, or phone call or face to face, to make sure that everyone is on schedule to provide whatever the task is." *Id*. Hall agrees that Hearne's job involved "periodic updates with team members, and then going back to the client and reporting the progress." *Id*. In deposition, when asked whether "there is anything else involved in being an account executive[,]" Hall replied, "Not much more than that." *Id*.

Hall's affidavit, dated two days before the date of his deposition testimony, provides a different assessment of Hearne's job duties. In his affidavit, Hall states that Hearne managed

---

[3]Although Jackson's testimony that "the bulk of a lot of his hours" went to developing final visual images, ACI does not claim that Jackson qualifies for exempt status under the FLSA's creative professional exemption. The exemption for creative professionals requires that the employee's "primary duty" be the performance of work requiring "invention, imagination, originality or talent in a recognized field for artistic or creative endeavor as opposed to routine mental, manual, mechanical, or physical work." 29 C.F.R. § 541.302(a). The administrative exemption, in contrast, applies when an employee's primary duty involves work "directly related to management policies or general business operations." *See* 29 C.F.R. § 541.200.

several accounts for which "he was the lead and had ultimate responsibility" and that Hearne's duties included creating marketing plans, drafting market proposals, and executing and assessing marketing plans. *See* docket entry #20, Ex. #4.

### **Findings and Conclusion**

After careful consideration, the Court finds that fact issues preclude summary judgment on Plaintiffs' overtime claims. As it stands, the record does not permit an evaluation of several important factors that should be considered in determining whether Plaintiffs exercised discretion and independent judgment, with respect to matters of significance, in performing their primary job duties. For example, the record contains no evidence regarding the degree to which Plaintiffs' work affected ACI's business operations, whether Plaintiffs had authority to deviate from established policies and procedures without prior approval, or whether Plaintiffs had authority to negotiate and bind the company on significant matters.

Furthermore, the evidence presented raises genuine issues of material fact as to whether Plaintiffs exercised independent judgment and discretion in carrying out their primary job duties. "Disputes regarding the nature of an employee's duties are questions of fact, but the ultimate question whether an employee is exempt under the FLSA is an issue of law." *Jarrett v. ERC Properties, Inc*., 211 F.3d 1078, 1081 (8th Cir.2000) (citing *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714, 106 S.Ct. 1527 (1986)). "Where issues of fact remain, it is for a trier of fact to determine, after hearing all the evidence, the actual nature and significance of [an employee's] duties and the extent to which [he or she] exercised discretion or independent judgment in carrying out those duties." *Reedy v. Rock-Tenn Co. of Arkansas,* No. 4:08CV00413 JLH, 2009 WL 1855544, *2 (June 29, 2009, E.D. Ark.).

### B.  Jackson's Retaliation Claim

Jackson charges that he was terminated "in direct response" to his "ongoing requests for overtime compensation."  *See* docket entry #25, Ex. A (Jackson Dep.) at 114.   According to Jackson, he asked Michael Steele for overtime pay on several occasions, but Steele refused his requests and indicated that Jackson was not entitled to overtime pay because he was not an "hourly wage" employee.  *See* docket entry #20, Ex. 3 (Jackson Dep) at 75-77.  Jackson reports that he "debated with Mr. Steele about compensation for years . . . and was always told [he] would be taken care of."  *Id*. at 76.  Jackson states that he did not file a complaint with the DOL because he did not know that such recourse was available to him.  *Id*. at 77.

The FLSA provides that it shall be unlawful for any person "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee . . . .  29 U.S.C. § 215(a)(3).

Defendants move for summary judgment on the ground that Jackson did not participate in any of the protected activities listed in § 215(a)(3)–that is, filing a complaint, instituting or testifying in a proceeding, or serving on a committee.  In response, Jackson urges the Court to interpret § 215(a)(3) expansively and find that his requests for overtime are covered under the anti-retaliation provision.

Unlike the anti-retaliation provisions governing claims under Title VII, the Americans with Disabilities Act, and the Age Discrimination in Employment Act, § 215(a)(3) does not include an  "opposition clause" that brings informal protests and oral complaints within the

ambit of protected activity.[4]

"[W]here the text of a statute is unambiguous, the statute should be enforced as written, and '[o]nly the most extraordinary showing of contrary intentions in the legislative history will justify a departure from that language.'" *United States v. Sabri,* 326 F.3d 937, 943 (8th Cir. 2003)(quoting *United States v. Albertini*, 472 U.S. 675, 680, 105 S.Ct. 2897(1985)).  Here, the Court finds no showing of contrary intent warranting a deviation from the plain text of the FLSA's anti-retaliation provision, which prohibits retaliation against employees who file a complaint, institute proceedings, or testify in proceedings.  While Jackson's arguments in support of broad interpretation give voice to important policy concerns, it is not for the Court to disregard the plain language of § 215(a)(3) and find that an employee's oral request for overtime compensation is protected activity under the FLSA.

The Court finds that protection under § 215(a)(3) is available to employees who have suffered retaliation for participating in the specific activities enumerated in the statute and that Jackson's oral requests for overtime pay do not qualify.[5]  *See Ball v. Memphis Bar-B-Q Co., Inc.*,

---

[4]*See* 42 U.S.C. § 2000e-3(a) (Title VII)("It shall be an unlawful employment practice for an employer to discriminate . . . against any individual . . . . because he has opposed any practice made an unlawful employment practice by this subchapter . . . . "); 42 U.S.C. § 12203(a) (ADA)("No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter . . . ."); 29 U.S.C. § 623(d) (ADEA)("It shall be unlawful for an employer to discriminate against any of his employees . . . because such individual . . . has opposed any practice made unlawful by this section . . . . ").

[5]The Court has considered the Eighth Circuit's decision in *Brennan v. Maxey's Yamaha, Inc.*, 513 F.2d 179 (8th Cir. 1975), and finds that the facts in that case are significantly different from those presented here.  In *Brennan,* an investigation by the Department of Labor disclosed minimum wage and maximum hour violations with regard to nine of the defendant's employees.  At the government's request, the defendant agreed to pay the back wages due and issued each employee a check.  However, the employer asked some of the employees, including the plaintiff, to endorse their checks back to the employer and to sign receipt forms without actually receiving and retaining the check proceeds.  The plaintiff protested, refused the employer's request and

11

228 F.3d 360 (4th Cir. 2000)(holding that § 215(a)(3) does not protect internal complaints); *Bartis v. John Bommarito Oldsmobile-Cadillac, Inc.,* No. 4:09CV183 CDP, 2009 WL 1576838, at *2 (E.D. Mo. June 4, 2009)(holding that employee's informal workplace complaints were not protected activity under § 215(a)(3)); *Brown v. L & P Industries, LLC*, No 5:04CV0379 JLH, 2005 WL 3503637, 14 (E.D. Ark. Dec. 21, 2005)(holding that internal complaints and threatening to call DOL does not qualify as protected activity under § 215(a)(3)); *Clevinger v. Motel Sleepers, Inc*., 36 F. Supp. 2d 322 (W.D. Va.1999)(holding that internal complaints to management for failure to pay minimum wage does not qualify as protected activity under § 215(a)(3)). Accordingly, the Court finds that Jackson's retaliation claim must be dismissed.

### III.

For the reasons stated, Defendants' motion for summary judgment (docket entry #20) is GRANTED IN PART AND DENIED IN PART. Jackson's retaliation claim under 42 U.S.C. § 215(a)(3) is DISMISSED WITH PREJUDICE, and Plaintiffs' claims for overtime compensation remain.

IT IS SO ORDERED THIS 14TH DAY OF AUGUST, 2009.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE

---

was discharged. The Eighth Circuit held that the plaintiff's protest was an act protected from reprisals under the FLSA. Unlike the plaintiff in *Brennan*, Jackson did not take action in connection with an FLSA wage and hour investigation.